IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **HIPOLITO BAERGA COLÓN,**<br><br>    *Plaintiff*,<br><br>v.<br><br>**MENONITA GUAYAMA HOSPITAL, INC.,** *et al.*,<br><br>    *Defendants.* | Civ. No. 22-01546 (MAJ) |

**OPINION AND ORDER**

**I.    Introduction and Procedural Background**

This is a medical malpractice action brought by Plaintiff Hipolito Baerga Colón ("Plaintiff"), seeking to hold various hospitals, medical groups, doctors, and insurers liable for damages following the death of both of his parents. On November 22, 2021, Hipolito Baerga Montes ("Mr. Baerga Montes") and his wife Virginia Colón Santiago ("Mrs. Colón Santiago") suffered a car accident. Both passengers received medical treatment at the emergency room at Menonita Guayama Hospital ("Menonita Guayama"). Two days later, on November 24, 2021, both presented to the emergency room at Hospital General Menonita ("Menonita Cayey") and received treatment there. Mr. Baerga Montes passed away that evening, and Mrs. Colón Santiago passed away shortly after, on December 11, 2021.

Plaintiff, the adult son of Mr. Baerga Montes and Mrs. Colón Santiago, first brought this action on November 19, 2022. (**ECF 1**). On January 23, 2023, he filed an Amended Complaint against Menonita Guayama, Menonita Cayey, South Central Emergency Group ("South Central"), Dr. Yves Rivera Hernández, Dr. Alejandro

Marmolejo, and various insurers. (**ECF 17**).

On March 14, 2023, Defendants Menonita Guayama and Menonita Cayey (collectively, "the Menonita Defendants"), filed a crossclaim against South Central and its insurer, Puerto Rico Medical Defense Insurance Company ("PRMDIC"), claiming that these entities must indemnify the Menonita Defendants for any liability imposed upon them in this case. (**ECF 36**). On February 14, 2025, the Menonita Defendants filed a Motion for Summary Judgment as to this crossclaim. (**ECF 70**). A statement of uncontested material facts was included. (**ECF 70-1**). Partial English translations to the exhibits to the motion were subsequently filed. (**ECF 83**). South Central and PRMDIC responded, (**ECF 104**; counterstatement to statement of uncontested material facts at **ECF 105**), and the Menonita Defendants replied (**ECF 111**).

Also on February 14, 2025, the Menonita Defendants filed a separate Motion for Partial Summary Judgment, seeking to dismiss various claims of liability based on alleged deficiencies in Plaintiff's proffered expert reports. (**ECF 73**). A statement of uncontested material facts was included. (**ECF 73-1**). Plaintiff responded to this motion. (**ECF 88**). He also included a response to Defendants' statement of uncontested material facts and a statement of additional uncontested material facts, (**ECF 87**), but later filed an amended statement at **ECF 103**. Partial English translations to the exhibits attached to ECF 87 were subsequently filed. (**ECF 113**). The Menonita Defendants replied, (**ECF 110**), and included a response to Plaintiff's statement of additional uncontested facts. (**ECF 110-1**). Plaintiff filed a sur-reply. (**ECF 122; ECF 123**).[1] The Menonita Defendants

---

[1] Dr. Marmolejo also filed a response to both Motions for Summary Judgment (**ECF 86; ECF 90**). The Menonita Defendants have moved to strike both Responses submitted by Dr. Marmolejo, due to the fact that neither of the Motions requested summary judgment be entered against Dr. Marmolejo as to any claims. (**ECF 93**). Dr. Marmolejo filed a response, claiming that he "has standing to file oppositions because both motions . . . request this Honorable Court to make a determination as to a number of alleged

also filed a motion in limine seeking to preclude or limit the testimony of one of Plaintiff's experts, Dr. Drukteinis, as to the same claims discussed in their Motion for Partial Summary Judgment at ECF 73. (**ECF 136**). Plaintiff responded, (**ECF 159**), Defendants replied, (**ECF 172**), and Plaintiff sur-replied, (**ECF 180**).

For the reasons discussed herein, the Motion in Limine at 136 is **DENIED**. Menonita Defendants' Motion for Partial Summary Judgment at ECF 73 is **DENIED**, except as to the limited, undisputed issue discussed at Section IV(B)(i). Menonita Defendants' Motion for Summary Judgment as to their crossclaim at ECF 70 is **GRANTED** in part and **DENIED** in part. The Motion to Strike at ECF 93 is **GRANTED**.

## II. Factual Background[2]

On November 22, 2021, Mr. Baerga Montes and Mrs. Colón Santiago were in a single-vehicle collision. (**ECF 73-1 at 2 ¶ 4**); (**ECF 103 at 2 ¶ 4**). According to the medical records, the accident occurred because Mr. Baerga Montes lost consciousness

---

uncontested facts." (**ECF 100 at 1–2**).
   The Court agrees with the Menonita Defendants that it is inappropriate for Dr. Marmolejo to oppose summary judgment as to claims that do not concern him. Defendants' Motion to Strike at ECF 93 is therefore **GRANTED**. Dr. Marmolejo's concern regarding the finding of undisputed facts is addressed separately, *see infra* note 2.

[2]   Pursuant to Federal Rule of Civil Procedure 56(c) and Local Rule 56(c), when tasked with resolving a motion for summary judgment, courts typically should credit only uncontroverted facts that are contained within "a separate, short, and concise statement of material facts" (typically presented as a "Statement of Uncontested Material Facts"). This statement should include specific citations to the record for each fact. D.P.R. LOC. CIV. R. 56(c). The court may disregard any statement of fact which does not comply with this rule. D.P.R. LOC. CIV. R. 56(e).
   Yet, because the motions at ECF 70 and ECF 73 are both motions for only partial summary judgment, requesting adjudication of only certain claims against certain parties, the parties' submitted "Statements of Uncontested Material Facts" and responses thereto address only a narrow set of facts in this case. (**ECF 70-1, 73-1, 103, 105, 110-1**). Moreover, as noted by Dr. Marmelejo at ECF 100 and discussed *supra* at note 1, only the parties to those specific motions – namely Plaintiff and the Menonita Defendants, with respect to ECF 73, and Plaintiff, South Central, and PRMDIC, with respect to ECF 70 – have been given an opportunity to contest the facts contained in these "Statements." The Statements are therefore of limited use to the Court in determining whether these facts, or any others, remain genuinely disputed in this case. For the avoidance of doubt, the Court now makes clear that the "facts" contained in this section are provided for background purposes, and are considered "undisputed" solely as between the relevant parties, and solely for the purposes of the instant Opinion and Order. To the extent any of the "facts" contained in this section have been or will be genuinely disputed by any other parties, those parties remain free to raise those disputes at trial.

while driving, causing the car to crash into a fence. (**ECF 17 at 5 ¶ 21**); (**ECF 73-4 at 3**). Both passengers were taken to Menonita Guayama where they received medical treatment at the emergency room. (**ECF 73-1 at 2 ¶ 4**); (**ECF 103 at 2 ¶ 4**). Both were evaluated and treated by Dr. Rivera Hernández. (**ECF 73-1 at 2 ¶ 5**); (**ECF 103 at 2 ¶ 5**). Plaintiff alleges that no detailed history regarding the circumstances of the accident was recorded, (**ECF 103 at 10 ¶ 11–11 ¶ 13, 11 ¶ 16**), no EKG was performed on either patient, (**ECF 103 at 10 ¶ 10**); (**ECF 110-1 at 3 ¶ 10**), and no CT scan was performed on Mrs. Colón Santiago. (**ECF 17 at 6 ¶¶ 29–30**); (**ECF 73-5 at 5–6**). Both patients were discharged from Menonita Guayama that evening. (**ECF 17 at 5–6 ¶ 26, 6 ¶ 31**).

Over the next two days, both patients experienced severe pain. (**ECF 17 at 6 ¶ 32**). Additionally, Mr. Baerga Montes presented diarrhea, disorientation, and trouble speaking, while Mrs. Colón Santiago experienced trouble urinating and heartburn. (**Id. at 6–7 ¶ 33**). On November 24, 2021, both were transported to the emergency room at Menonita Cayey by ambulance. (**ECF 73-1 at 3 ¶ 6**); (**ECF 103 at 2 ¶ 6**). While at Menonita Cayey, Mr. Baerga Montes was evaluated and treated by Dr. Marmolejo. (**ECF 73-1 at 3 ¶ 7**); (**ECF 103 at 2 ¶ 7**). Though he arrived at the emergency room around 7:15 pm, he was not seen by Dr. Marmolejo until around 9:15 pm. (**ECF 17 at 7 ¶ 35**); (**ECF 103 at 49**); (**ECF 110-1 at 9 ¶ 49**); (**ECF 113-4 at 7 ¶ 4–8**). During the interim, he was received and treated by members of the emergency room staff at Menonita Cayey, including Nurse Germarelis Silva Figueroa (also referred to in the record as Nurse Germarelis Vega) (**ECF 103 at 15 ¶ 37**); (**ECF 110-1 at 7 ¶ 37**). Mr. Baerga Montes passed away that evening, on November 24, 2021. (**ECF 17 at 6 ¶ 33, 7 ¶ 40**); (**ECF 73-4 at 7**). According to the forensic autopsy report, his cause of death was "Bodily Trauma" – more specifically, "Rib Fractures and Associated Bronchopneumonia." (**ECF 113-5**).

Mrs. Colón Santiago was evaluated at Menonita Cayey by another doctor who is not a party to this case. (**ECF 17 at 7 ¶ 41**). After a CT scan and other radiological exams revealed extensive internal injuries, Mrs. Colón Santiago was transferred to another hospital on November 25, 2021. (**ECF 17 at 42–45**). She passed away on December 11, 2021. (**ECF 17 at 8 ¶ 46**); (**ECF 73-5 at 6**). According to the forensic autopsy report, her cause of death was "Severe body trauma." (**ECF 113-6 at 3**).

### III. The Motion in Limine at ECF 136

The questions raised in the pending Motion in Limine filed by the Menonita Defendants at ECF 136, regarding Dr. Drukteinis's qualifications as an expert witness and the reliability and admissibility of his opinions under Federal Rule of Evidence 702, are material to the analysis of the motions for summary judgment, and cross reference between them is made by the parties. Therefore, the Court will first address these threshold issues.[3]

In their Motion in Limine, the Menonita Defendants move to preclude Plaintiff's expert witness Dr. Drukteinis from providing any opinions as to alleged deviations from the standard of care by the emergency room staff at either Menonita Guayama or Menonita Cayey, arguing primarily that Dr. Drukteinis is not qualified to render an opinion as to the standard of care applicable to nurses or emergency room personnel. (**ECF 136 at 2**).

Under the Federal Rules of Evidence, "a witness who is qualified as an expert by knowledge, skill, experience, training, or education" may provide expert opinions if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the

---

[3] To the extent this motion in limine also contains arguments that Dr. Drukteinis has failed to render an opinion as to these issues, separate from the question of his qualification, these arguments are addressed separately below. *See infra* Section IV(B)(ii), (iii).

> testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. To determine whether an opinion proffered by an expert is admissible, the trial judge performs a "gatekeeping function" by ensuring that the proffered expert testimony satisfies the admissibility criteria of Rule 702. *United States v. Sepúlveda*, 15 F.3d 1161, 1183 (1st Cir. 1993). It is the responsibility of the trial court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). This is a "flexible inquiry" that requires the court to gauge the "overall reliability" of a proffered expert witness testimony as well as its "special relevancy" to the issues to be presented to the jury. *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 80–81 (1st Cir. 1998) (citing *Daubert*, 509 U.S. at 593, 589–592).

"Because gauging an expert witness's usefulness is almost always a case-specific inquiry," trial courts enjoy substantial discretion to determine whether to admit or exclude expert witness opinions. *Sepúlveda*, 15 F.3d at 1183. "So long as an expert's scientific testimony rests upon good grounds . . . it should be tested by the adversarial process[.]" *López-Ramírez v. Toledo-González*, 32 F.4th 87, 94 (1st Cir. 2022) (internal quotations omitted). As the First Circuit has explained, "[t]here is an important difference between what is *unreliable* support and what a trier of fact may conclude is *insufficient* support for an expert's conclusion." *Milward v. Acuity Specialty Prods. Grp., Inc.*, 639 F.3d 11, 22 (1st Cir. 2011) (emphasis in original). Where the factual basis for an expert opinion is merely "weak" – rather than fundamentally unreliable or irrelevant – the expert's opinion is to be weighed by the jury. *Id*. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the

traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Defendants' primary contention is that because Dr. Drukteinis is a doctor, he is unqualified to testify as to the standard of care applicable to nurses and other emergency room personnel. (**ECF 136 at 2**). Yet it is well-established that the "proffered expert physician need not be a specialist in a particular medical discipline to render expert testimony relating to that discipline." *Gaydar v. Sociedad Instituto Gineco-Quirurgico y Planificación,* 345 F.3d 15, 24 (1st Cir. 2003). In fact, where an expert physician's testimony would "be helpful to the jury in resolving the case," it would be an abuse of discretion to exclude that evidence solely on the basis of the expert's medical specialty. *Id.* at 24–25. Applying these principles, courts in this Circuit and District have regularly admitted testimony from physician experts regarding the standard of care applicable to nurses. *See, e.g.*, *Guerríos Flores v. S.M. Med. Servs., C.S.P.*, 18-cv-1594, 2020 WL 13490521, at *1 (D.P.R. July 21, 2020); *Rodríguez-Valentín v. Drs.' Ctr. Hosp. (Manatí), Inc.*, 17-cv-1372, 2020 WL 6273760, at *1 (D.P.R. Oct. 22, 2020), *aff'd*, 27 F.4th 14 (1st Cir. 2022); *Marcano Rivera v. Turabo Med. Ctr. P'ship*, 415 F.3d 162, 168 (1st Cir. 2005).

According to his written reports, Dr. Drukteinis has been an Attending Emergency Medicine Physician since 2008. (**ECF 73-4 at 1**). He "deal[s] with nurses and what nurses have to do every day" and considers himself "an expert in some aspects of nursing." (**ECF 73-8 at 153:22–24**). In other words, Dr. Drukteinis's training and experience provide him with "specialized knowledge" regarding the duties and standards applicable to emergency room nurses. FED. R. EVID. 702. The Court will not exclude his testimony solely because he is a doctor and not a nurse.

The Court also finds that Dr. Drukteinis's opinions are based on sufficient facts and

data, that those facts and data were the product of reliable methods, and that he has applied those methods in a reliable way to the facts of this case. FED. R. EVID. 702(b), (c), (d). Each of his three reports contains a section outlining the applicable standard of care. (**ECF 73-4 at 3; ECF 73-5 at 3; ECF 73-6 at 4**). Each of these sections contains quotes and citations from reliable medical sources, including medical journals, textbooks on emergency medicine, and the Emergency Severity Index ("ESI") — a published protocol for emergency department triage which is used by both doctors and nurses and is maintained by the Emergency Nurses Association — as well as published handbooks interpreting the ESI propounded by the Emergency Nurses Association and others. (**ECF 73-4 at 3–5; ECF 73-5 at 4–5; ECF 73-6 at 5–6**). Specific statements within the report are supported by footnotes to these sources, which include page numbers. (**Id.**). In his deposition, Dr. Drukteinis reaffirmed that his opinions as to the standard of care applicable to nurses were based on medical literature, including the sources cited in his reports. (**ECF 73-8 at 155:9–156:6**). The Defendants have never challenged the reliability of these sources, nor the accuracy of Dr. Drukteinis's citations. *See generally* (**ECF 73; ECF 110; ECF 136**). The Court thus finds that these are appropriate and reliable sources from which Dr. Drukteinis could determine the applicable standard of care and causation in this case.

      Accordingly, the Court finds that Dr. Drukteinis is qualified to testify competently as to the standard of care applicable to the emergency room staff at both hospitals, and whether any deviations from that standard of care caused the injuries in this case. The motion in limine to exclude his opinions on that basis is therefore **DENIED**. Any statements and opinions proffered by Dr. Drukteinis which are helpful to the trier of fact on these issues and are otherwise admissible will be admissible at trial.

## IV. Summary Judgment

### A. Legal Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact and only questions of law remain. FED. R. CIV. P. 56(a); *White v. Hewlett Packard Enter. Co.*, 985 F.3d 61, 68 (1st Cir. 2021). "A genuine dispute is one that a reasonable fact-finder could resolve in favor of either party[.]" *Flood v. Bank of Am. Corp.*, 780 F.3d 1, 7 (1st Cir. 2015). "[A] fact is material if it has the potential of affecting the outcome of the case[.]" *Taite v. Bridgewater State Univ., Bd. of Trs.*, 999 F.3d 86, 93 (1st Cir. 2021) (internal quotations omitted).

The party moving for summary judgment "bears the initial burden of showing that no genuine issue of material fact exists." *Feliciano-Muñoz v. Rebarber-Ocasio*, 970 F.3d 53, 62 (1st Cir. 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). This burden is met "when the moving party demonstrates that the opposing party has failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *E.E.O.C. v. Kohl's Dep't Stores, Inc.*, 774 F.3d 127, 131 (1st Cir. 2014) (quoting *Celotex*, 477 U.S. at 322). In opposing a motion for summary judgment, the plaintiff "bears the burden of producing specific facts sufficient to defeat summary judgment." *González-Cabán v. JR Seafood Inc.*, 48 F.4th 10, 14 (1st Cir. 2022) (internal quotations omitted). The Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Cochran v. Quest Software*, Inc., 328 F.3d 1, 6 (1st Cir. 2003). The goal of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Carrozza v. CVS Pharmacy, Inc.*, 992 F.3d 44, 56 (1st Cir. 2021) (internal quotations omitted).

**B. Menonita's Motion for Partial Summary Judgment Regarding Emergency Room Staff (ECF 73)**

The Court now turns to the Motion for Partial Summary Judgment filed by the Menonita Defendants at ECF 73. In this sprawling Motion, the Menonita Defendants request dismissal of a variety of claims of liability, including 1) all "claims of liability regarding the medical treatment received by Virginia Colón Santiago at [Menonita Cayey's] emergency room on November 24th, 2021," (**ECF 73 at 2**); 2) all "claims of liability stemming from the alleged negligence committed by [Menonita Cayey's] emergency room nursing staff and personnel in regards to the treatment of Hipolito Baerga Montes" on November 24th, 2021, (**Id.**); and 3) all claims "stemming from the alleged negligent acts and/or omissions committed by [Menonita Guayama's] emergency room nursing staff and personnel in regards to the treatment of both Virginia Colón Santiago and Hipolito Baerga Montes on November 22nd, 2021." (**Id.**). The Court will address each claim in turn.

### i. Claims stemming from treatment of Mrs. Colón Santiago at Menonita Cayey

The Menonita Defendants request partial summary judgment dismissing any claims of liability regarding the treatment received by Mrs. Colón Santiago at Menonita Cayey's emergency room on November 24th, 2021. (**ECF 73 at 15–16**). Defendants argue that summary judgment is warranted as to these claims because neither Dr. Drukteinis nor Dr. Ortiz Feliciano has rendered an expert opinion with respect to Mrs. Colón Santiago's treatment at Menonita Cayey. (**Id.**). In his Response, Plaintiff "agrees that there are no claims for liability regarding the emergency treatment provided to Ms. Virginia Colon on November 24, 2021." (**ECF 88 at 13**). Thus, Defendants' request for summary judgment as to these claims is therefore **GRANTED**.

### ii. Claims stemming from alleged negligence of emergency room staff at Menonita Cayey with respect to Mr. Baerga Montes

Menonita Cayey next requests that partial summary judgment be entered dismissing any "claims of liability stemming from the alleged negligence committed by its emergency room nursing staff and personnel" at Menonita Cayey with respect to Mr. Baerga Montes. (**ECF 73 at 16**). Defendant put forth several alternative arguments: first, that Dr. Drukteinis is not qualified to provide expert opinions related to these claims; second, that even if he were qualified, his reports and deposition testimony have not established the applicable standard of care as to these claims; and third, that even if he had provided opinions establishing the standard of care, he has not provided opinions sufficient to establish causation. Menonita Cayey posits that without expert testimony establishing standard of care and causation, it will be impossible for Plaintiff to succeed on these claims at trial. *See Kohl's*, 774 F.3d at 131 (a moving party may meet its burden on summary judgment by "demonstrat[ing] that the opposing party has failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

Defendants' arguments that Dr. Drukteinis is not qualified to offer expert opinions as to these claims have already been addressed and rejected by the Court. *See supra* Section III. The question then becomes whether a reasonable factfinder could find there is enough admissible evidence on the record to establish the standard of care applicable to these claims. *See Kohl's*, 774 F.3d at 131. Under Puerto Rico law, "'[i]n order to determine the applicable standard of care in a medical malpractice action and to make a judgment on causation, a trier of fact will generally need the assistance of expert testimony.'" *Laureano-Quiñones v. Nadal-Carrión*, 982 F.3d 846, 848 (1st Cir. 2020).

"With respect to a negligence claim that alleges medical malpractice, Puerto Rico holds health care professionals to a national standard of care." *López-Ramírez*, 32 F.4th at 91 (internal quotations omitted).[4] To establish the minimum standard of care, "an expert may: (1) provide evidence of professional discussions about the applicable course of treatment, such as in conventions, meetings or seminars, (2) present relevant data like published protocols and standards, or (3) rely on peer-reviewed literature." *Sandoval v. Hosp. Oriente, Inc.*, 770 F. Supp. 3d 412, 427 (D.P.R. 2025). This list is not meant to be exhaustive: the important thing is that "an expert cannot simply rely on the fact that he would have done things differently." *Id.* at 427–28.

Without a doubt, the expert reports provided by Dr. Drukteinis have satisfied these requirements. Dr. Drukteinis frames "the central query" of his report regarding Mr. Baerga Colon's treatment at Menonita Cayey as establishing "the standard of care for

---

[4] With respect to the standard of care owed specifically by nurses, Puerto Rico law indicates that "[a] nurse should exercise a certain standard of reasonable care to see that no unnecessary harm comes to the patient, and said standard of care must be the same as the standard of care exercised by *other nurses in the locality or similar localities*." *Morales v. Monagas,* 723 F. Supp. 2d 416, 422 (D.P.R. 2010) (citing *Blás Toledo v. Hospital Nuestra Señora de la Guadalupe,* 146 D.P.R. 267, 307 (P.R. 1998)) (emphasis added) (internal quotations omitted). However, courts in this District have permitted medical malpractice claims based on expert testimony which established a national, rather than local, standard of care for nurses. For example, in *Correa-Carrillo v. Grupo HIMA San Pablo-Fajardo Inc.*, 594 F. Supp. 3d 414 (D.P.R. 2022), the expert witness stated explicitly that his opinions as to the standard of care for nurses were based on a national standard and that he did "not have an understanding of those specific nursing standards of care that are unique to Puerto Rico." *Id.* at 421. Defendants raised this issue in their post-trial motions, arguing that plaintiff had failed to establish the standard of care applicable to nurses in Puerto Rico. *Id.* at 420. The court rejected defendants' argument, finding that because the defendant "failed to establish how the local standard of care is different in any material respect from the standard of care that [the expert] testified to at trial," the jury in that case was entitled to credit the expert's opinion as to the applicable standard of care. *Id.* at 421; *see also Rodríguez-Valentín v. Drs.' Ctr. Hosp. (Manatí), Inc.*, 27 F.4th 14, 21 (1st Cir. 2022) (holding on appeal that the jury in a District of Puerto Rico case was entitled to credit the plaintiff's expert's opinion that the standard of care for nurses in Puerto Rico was the same as in the rest of the United States).

Defendants in this case have never argued that Dr. Drukteinis's opinions should be excluded for failing to articulate a nursing standard of care which is specific to Puerto Rico. *See generally* (**ECF 73; ECF 110; ECF 136**). Thus, as in *Correa-Carrillo*, Defendants have "failed to establish how the local standard of care is different in any material respect from the standard of care" articulated by Dr. Drukteinis. The Court therefore declines to exclude Dr. Drukteinis's testimony on that basis. Here, as in that case, the jury shall be entitled to credit the expert's testimony as to what he believes is the applicable standard of care.

managing an elderly patient with acute altered mental status in the emergency department." (**ECF 73-6 at 4**). The report provides a detailed, step-by-step walkthrough of the way such a patient should be treated — including by emergency room staff other than physicians — starting from the minute the patient walks through the emergency room doors. (**ECF 73-6 at 4**) ("For *every* emergency department patient, staff begins by taking the patient's vital signs at triage and assigning the patient an Emergency Severity Index (ESI) Score.") (emphasis added). The expert then explains the importance of triage and obtaining an accurate ESI score. (**Id.**) ("This process assesses the potential seriousness of the patient's condition . . . communicates the urgency of the patient's condition and also prepares the staff. . . . The ESI Score sets the department's pace with respect to the prioritization and management of every patient."). Dr. Drukteinis supports these conclusions with citations to the ESI, a published protocol maintained by the Emergency Nurses Association, and related handbooks and guidance interpreting the same. (**Id. at 4–5**). Quoting from an "Implementation Handbook" for the ESI, the report states that "In general, patients with an ESI 2, 'should be rapidly facilitated and patients should ideally wait no longer than 10 minutes to be placed in the treatment area.'" (**Id. at 5**). With respect to whose responsibility this is, he states: "If the physician is unable to attend to the patient immediately, the emergency nurse will often initiate care through established protocols." (**Id.**).[5] And when asked directly at deposition what deviations

---

[5] In her deposition, Nurse Germarelis Silva Figueroa confirmed that such protocols exist at Menonita Cayey and that initiating care under these circumstances was among her duties as an emergency room nurse:

> I receive them, but if the patient is unstable and, based on my criteria, warrants immediate attention, I treat them. In that case, as far as I recall, my function was to treat both [Mr. Baerga Montes and Mrs. Colón Santiago], get them to the ward, and my part is to proceed to move forward as much as possible until the physician arrives. For example, connecting them to the cardiac monitor, get the samples, open a line, do an EKG, vital signs and triage until the physician . . . arrives and does his or her part."

(**ECF 113-2 at 5:3–16**).

from the standard of care the nursing staff committed "in regards to [the] triage" of Mr. Baerga Montes at Menonita Cayey, Dr. Drukteinis listed the following deviations: "they didn't stroke-alert him. They didn't obtain labs quickly enough. They didn't obtain an EKG quickly enough. They didn't speak to a physician quick enough, from what I can tell from the record. All of these things led to a significant delay in his management." (**ECF 73-8 at 155:3–8**). The Court finds that these statements, taken together, are more than sufficient to establish an expert opinion as to the standard of care required of the emergency room nurses and staff at Menonita Cayey.

The Court also finds that the expert has sufficiently established a causal nexus between Mr. Baerga Montes's death and the deviations in standard of care allegedly committed by the Cayey emergency room staff in this case. To succeed in a medical malpractice action under Puerto Rico law, a plaintiff must be able to prove, by a preponderance of the evidence, that the negligence of the medical provider "was the factor that most probably caused harm to the plaintiff." *Lama v. Borras*, 16 F.3d 473, 478 (1st Cir. 1994) (internal quotations omitted). But the law is clear that this fact "need not be established with mathematical accuracy," nor is it necessary to rule out all other causes of the injury. *Id*. Such a rule is "in keeping with the law of Puerto Rico, which recognizes comparative negligence." *Rodríguez-Valentín*, 2020 WL 6273760, at *3 (upholding a jury verdict which apportioned 92% of the damages to physicians and the remaining 8% of damages to the hospital, based on an expert opinion that while the doctors "caused" the brain damage in that case, the nurses caused "significantly greater brain damage" by failing to recognize that the patient was receiving inadequate oxygen, failing to inform the physicians of this fact, and continuing to administer the medication causing the lack of oxygen), *aff'd*, 27 F.4th 14 (1st Cir. 2022); *see also Marcano Rivera*, 415 F.3d at 168–169.

Dr. Drukteinis has provided similar opinions in this case. He has stated unequivocally that "the emergency department staff at Hospital Menonita Cayey fell below the standard of care in their management of Mr. Hipolito Baerga Montes on November 24, 2021." (**ECF 73-6 at 7**). Specifically, "the failure to promptly evaluate, monitor, and treat Mr. Baerga Montes affected his prognosis, which ultimately resulted in his demise." (**Id.**). He attributed this delay in evaluating, monitoring, and treating Mr. Baerga Montes at least in part to the emergency room staff. (**Id.**) ("despite being assigned an ESI score of 2, the staff did not transfer him to the treatment area until 9:16 pm."); *see also, e.g.*, (**ECF 73-8 at 155:5–7**) ("[the nurses] didn't speak to a physician quick enough, from what I can tell from the record."). The expert report also explains that if basic labs and scans had been timely ordered, they would have revealed that Mr. Baerga Montes had pneumonia, such that "the need for stat sepsis management would have become immediately obvious, improving Mr. Baerga Montes' prognosis." (**ECF 73-6 at 7**). According to the forensic autopsy report, Mr. Baerga Montes's died from pneumonia associated with the bodily trauma he had sustained in the accident. (**ECF 113-5**).

The Court thus finds that a reasonable trier of fact could rely on these opinions to determine the standard of care applicable to the emergency room staff at Menonita Cayey, whether there were any deviations from that standard of care, and whether those deviations caused Plaintiff's injuries. Defendants' request for summary judgment as to the claims stemming from the alleged negligence of the nurses and emergency department staff at Menonita Cayey is therefore **DENIED**.

### iii. Claims stemming from alleged negligence of emergency room staff at Menonita Guayama

Finally, Menonita Guayama requests summary judgment dismissing "all Plaintiff's

claims for liability stemming from the allegedly negligent acts and/or omissions committed by its emergency room nursing staff and personnel" with respect to the treatment of both patients at Menonita Guayama. (**ECF 73 at 9**). In addition to the arguments regarding qualification addressed above, Defendants argue that Dr. Drukteinis has not provided an expert opinion regarding the standard of care for emergency room staff at Guayama, nor an opinion regarding causation with respect to those staff. Defendants further argue that Plaintiffs will be unable to establish these elements of their claim at trial, such that summary judgment is warranted as to these claims.

A review of Dr. Drukteinis's proffered opinions in this case reveals that he has in fact opined on the relevant standard of care and causation as to the emergency room staff at Menonita Guayama. Regarding the treatment of Mr. Baerga Montes, his expert report states clearly that, in the context of a patient who loses consciousness while driving, thereby causing a collision: "A detailed crash history is important[.]" (**ECF 73-4 at 3**). To support this opinion, he quotes from a medical textbook: "single-vehicle crashes should raise the suspicion that a medical problem caused the crash . . . and an evaluation for coincident events leading to trauma should be undertaken during the trauma management process." (**Id.**) (quoting RON WALLIS ET AL., ROSEN'S EMERGENCY MEDICINE: CONCEPTS AND CLINICAL PRACTICE 2328–29 (9th ed. 2018)). One such medical problem is syncope, or fainting, which can be caused by a variety of underlying health issues, any of which can be life-threatening, including but not limited to cardiac issues, blood pressure changes, dehydration, and medications. (**ECF 73-4 at 4**). Dr. Drukteinis further stated that Mr. Baerga Montes's hospital record at Guayama was "sparse in detail" regarding the circumstances of the crash, and that his medical workup failed to account for the possible reasons that Mr. Baerga Montes lost consciousness prior to the crash. (**Id. at 2, 6**). In his

deposition, Dr. Drukteinis clarified that "the lack of information about why" the collision occurred was, to him, a particularly "concerning part of the story." (**ECF 73-8 at 84:19–22**). And his report establishes a causal chain between this lack of an "appropriate workup" and Mr. Baerga's death:

> Once an appropriate workup has been performed, the emergency department physician must then determine whether the patient requires admission to the hospital for further monitoring and testing. . . . Admission was essential for Mr. Baerga Montes. He required further workup for his syncope, his elevated white blood cell count, his elevated neutrophils, and his concerning vital signs on scene. He required further monitoring inpatient to map his . . . clinical deterioration. He passed away within two days of being discharged.

(**ECF 73-4 at 5–7**).

With respect to the treatment of Mrs. Colón Santiago, Dr. Drukteinis similarly opined:

> the lack of any detail in the medical record regarding the circumstances of the motor vehicle collision is problematic. There is no description regarding the speed at which the vehicle had been traveling . . . no indication whether the vehicle was totaled after the collision . . . no description of the severity of pain experienced . . . no account of whether Mrs. Colon Santiago had been wearing a seatbelt, or if the airbags deployed. These are all standard questions asked to get a sense of the severity of the collision, thereby gaining an impression of the likelihood of underlying injuries.

(**ECF 73-5 at 6**). His report goes on to state that Ms. Colón Santiago's death on December 11 was "a result of [the] delay" in diagnosing and treating the injuries she sustained from the collision. (**Id.**).

Taken together, a reasonable jury could use these statements to determine the standard of care applicable to those members of the emergency department staff charged with completing the medical workup of patients, conducting initial intake interviews, and collecting information about motor vehicle crashes, as well as the causal nexus between performance of these duties and the injuries to both decedents in this case. Defendant

Menonita Guayama's request for partial summary judgment as to these claims is therefore **DENIED**.

### C. Menonita's Motion for Summary Judgment as to their Crossclaim Against South Central (ECF 70)

The Menonita Defendants have also moved for summary judgment as to their crossclaim against South Central. (**ECF 70**). Specifically, Defendants seek a judgment that "South Central and PRMD are contractually obligated to reimburse, indemnify, and hold the Menonita entities harmless for any sum or sums that they become legally obligated to pay Plaintiff" resulting from negligence by "South Central, Dr. Rivera Hernández, Dr. Marmolejo Morales, or any other members of the medical staff that treated and/or intervened with Hipolito Baerga Montes and Virginia Colón Santiago in the emergency rooms" at either hospital. (**ECF 70 at 2**). This claim is based on a series of contracts between the Menonita Defendants and South Central. It is undisputed that through these contracts, South Central "agree[d] and promise[d] to indemnify and hold harmless" both Menonita Cayey and Menonita Guayama "for any claims for damages caused by the tortious acts or omissions by [South Central] and/or any of its employees, agents, or subcontractors." (**ECF 83-1 at 17 ¶ f**); (**ECF 83-4 at 17 ¶ f**); (**ECF 70-1 at 3 ¶ 14**); (**ECF 105 at 4 ¶ 14**); (**ECF 70-1 at 4–5 ¶ 25**); (**ECF 105 at 6 ¶ 25**). It is also undisputed that both Dr. Rivera Hernández and Dr. Marmolejo were both "hired and/or subcontracted by" South Central. (**ECF 70-1 at 6 ¶ 31**); (**ECF 105 at 7 ¶ 31**).

Thus, to the extent the Menonita Defendants seek to "establish[] that South Central and PRMD[IC] are contractually obligated to indemnify the Menonita entities, and hold them harmless, for any liability imposed on them resulting from the alleged negligence committed by . . . Dr. Rivera Hernández [or] Dr. Marmolejo Morales," (**ECF 70 at 5**),

that request is **GRANTED**.

In their reply brief, the Menonita Defendants appear to concede that this is the extent of the relief they seek through the instant motion:

> All that the Appearing Defendants are requesting is that this Court rule that, in the event the jury finds that co-defendants Dr. Yves Rivera Hernández and/or Dr. Alejandro Marmolejo Morales are liable for Plaintiff's injuries, **if**, and only **if,** that happens, then South Central must reimburse, indemnify and hold harmless for any sum or sums that Appearing Defendants become legally obligated to pay Plaintiff resulting from the liability imposed on the codefendant physicians.

(**ECF 111 at 2 ¶ 6**) (emphasis in original). However, for the avoidance of doubt, the Court now reiterates that many questions of material fact remain regarding whether any other individuals or entities, other than Defendants Dr. Rivera Hernández and Dr. Marmolejo, can be held liable for any of the injuries in this case. *See supra*, Section IV(B)(ii), (iii). It also remains a question of disputed fact whether these other individuals, if any, were "hired and/or subcontracted by" South Central. (**ECF 70-1 at 6 ¶ 31**); (**ECF 105 at 7 ¶ 31**) (arguing that the "nursing and support staff" were employed by the Menonita Defendants, not South Central). Thus, to the extent that the Menonita Defendants have requested that the Court make a finding relating to claims of liability arising from conduct by "other members of the medical staff that treated and/or intervened with [Mr.] Baerga Montes and [Mrs.] Colón Santiago in the emergency rooms" at either hospital, (**ECF 70 at 2**), that request is **DENIED**.

V. **Conclusion**

At the summary judgment stage, the Menonita Defendants bear the burden of "demonstrat[ing] that [Plaintiff] has failed to make a showing sufficient to establish the existence of an element essential to [his] case." *Kohl's*, 774 F.3d at 131 (quoting *Celotex*, 477 U.S. at 322). Defendants have failed to demonstrate that Plaintiff will be unable at

trial to establish the elements of his claims stemming from alleged negligence of the emergency room staff at Menonita Cayey and Menonita Guayama. Therefore, their Motion for Partial Summary Judgment at ECF 73 is **DENIED**. For the same reasons, their motion for summary judgment regarding their Crossclaim against South Central and PRMDIC at ECF 70 is **GRANTED** in part and **DENIED** in part. The motion is **GRANTED** with respect to the physician defendants in this case, but **DENIED** as to the rest of the staff. Finally, as explained at Section III and throughout this Opinion, their motion in limine at ECF 136 is also **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 22nd day of September, 2025.

*/s/* **Maria Antongiorgi-Jordan**
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**