IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **HIPOLITO BAERGA-COLÓN**<br><br>*Plaintiff,*<br><br>v.<br><br>**MENONITA GUAYAMA HOSPITAL, INC.**, *et al.*,<br><br>*Defendants.* | Civ. No. 22-01546 (MAJ) |

**OPINION AND ORDER**

### I.   Introduction and Background

Before the Court is a Motion in Limine filed by Hospital General Menonita ("Menonita Cayey"), Menonita Guayama Hospital, Inc. ("Menonita Guayama"), and The Medical Protective Group ("Medpro") (collectively, "Moving Defendants"), who request that the Court prohibit Hipolito Baerga-Colón ("Plaintiff") from introducing expert witness testimony from Dr. José Ortiz Feliciano ("Dr. Ortiz") as to the alleged negligent deviations from the nursing standard of care by the emergency room nursing staff of Menonita Guayama and Menonita Cayey. (**ECF No. 137**). For the reasons that follow, the motion is **GRANTED** in part and **DENIED** in part.

### II.   Factual Background[1]

On November 22, 2021, Hipolito Baerga Montes ("Mr. Baerga Montes") and Virginia Colón Santiago ("Mrs. Colón Santiago") were in a single-vehicle collision. (**ECF**

---

[1] These facts are drawn from an Opinion and Order previously published by the Court. (**ECF No. 181**). Menonita Cayey and Menonita Guayama were parties to the motion for summary judgment resolved by the Opinion and Order. (**ECF No. 73**). These facts are recorded here solely for the purpose of providing background relevant to the motion in limine presently before the Court.

73-1 at 2 ¶ 4); (ECF 103 at 2 ¶ 4). According to the medical records, the accident occurred because Mr. Baerga Montes lost consciousness while driving, causing the car to crash into a fence. (ECF 17 at 5 ¶ 21); (ECF 73-4 at 3). Both passengers were taken to Menonita Guayama where they received medical treatment at the emergency room. (ECF 73-1 at 2 ¶ 4); (ECF 103 at 2 ¶ 4). Both were evaluated and treated by Dr. Rivera Hernández. (ECF 73-1 at 2 ¶ 5); (ECF 103 at 2 ¶ 5). Plaintiff alleges that no detailed history regarding the circumstances of the accident was recorded, (ECF 103 at 10 ¶ 11–11 ¶ 13, 11 ¶ 16), no EKG was performed on either patient, (ECF 103 at 10 ¶ 10); (ECF 110-1 at 3 ¶ 10), and no CT scan was performed on Mrs. Colón Santiago. (ECF 17 at 6 ¶¶ 29–30); (ECF 73-5 at 5–6). Both patients were discharged from Menonita Guayama that evening. (ECF 17 at 5–6 ¶ 26, 6 ¶ 31).

Over the next two days, both patients experienced severe pain. (ECF 17 at 6 ¶ 32). Additionally, Mr. Baerga Montes presented diarrhea, disorientation, and trouble speaking, while Mrs. Colón Santiago experienced trouble urinating and heartburn. (Id. at 6–7 ¶ 33). On November 24, 2021, both were transported to the emergency room at Menonita Cayey by ambulance. (ECF 73-1 at 3 ¶ 6); (ECF 103 at 2 ¶ 6). While at Menonita Cayey, Mr. Baerga Montes was evaluated and treated by Dr. Marmolejo. (ECF 73-1 at 3 ¶ 7); (ECF 103 at 2 ¶ 7). Though he arrived at the emergency room around 7:15 pm, he was not seen by Dr. Marmolejo until around 9:15 pm. (ECF 17 at 7 ¶ 35); (ECF 103 at 49); (ECF 110-1 at 9 ¶ 49); (ECF 113-4 at 7 ¶ 4–8). During the interim, he was received and treated by members of the emergency room staff at Menonita Cayey, including Nurse Germarelis Silva Figueroa (also referred to in the record as Nurse Germarelis Vega) (ECF 103 at 15 ¶ 37); (ECF 110-1 at 7 ¶ 37). Mr. Baerga Montes passed away that evening, on November 24, 2021. (ECF 17 at 6 ¶ 33, 7 ¶ 40); (ECF 73-

**4 at 7**). According to the forensic autopsy report, his cause of death was "Bodily Trauma" – more specifically, "Rib Fractures and Associated Bronchopneumonia." (**ECF 113-5**).

Mrs. Colón Santiago was evaluated at Menonita Cayey by another doctor who is not a party to this case. (**ECF 17 at 7 ¶ 41**). After a CT scan and other radiological exams revealed extensive internal injuries, Mrs. Colón Santiago was transferred to another hospital on November 25, 2021. (**ECF 17 at 42–45**). She passed away on December 11, 2021. (**ECF 17 at 8 ¶ 46**); (**ECF 73-5 at 6**). According to the forensic autopsy report, her cause of death was "Severe body trauma." (**ECF 113-6 at 3**).

### III.   Legal Standard

The admission of expert testimony is governed by Federal Rule of Evidence 702, which provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;
> (b)   the testimony is based on sufficient facts or data;
> (c)   the testimony is the product of reliable principles and methods; and
> (d)   the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Rule 702 directs the court to consider the admissibility of expert testimony by determining whether "an expert's proffered testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Carrozza v. CVS Pharmacy, Inc.*, 992 F.3d 44, 55–56 (1st Cir. 2021) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). This is a "flexible inquiry" that requires the court to gauge the "overall reliability" of a proffered expert witness testimony as well as its "special relevancy" to the issues to be presented to the jury. *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 80–81 (1st Cir. 1998) (citing *Daubert,* 509 U.S. at 591–93).

"Because gauging an expert witness's usefulness is almost always a case-specific inquiry," trial courts enjoy substantial discretion to determine whether to admit or exclude expert witness opinions. *United States v. Sepúlveda*, 15 F.3d 1161, 1183 (1st Cir. 1993). "So long as an expert's scientific testimony rests upon good grounds . . . it should be tested by the adversarial process[.]" *López-Ramírez v. Toledo-González*, 32 F.4th 87, 94 (1st Cir. 2022) (internal quotations omitted). As the First Circuit has explained, "[t]here is an important difference between what is *unreliable* support and what a trier of fact may conclude is *insufficient* support for an expert's conclusion." *Milward v. Acuity Specialty Prods. Grp., Inc.*, 639 F.3d 11, 22 (1st Cir. 2011) (emphasis in original). Where the factual basis for an expert opinion is merely "weak"—rather than fundamentally unreliable or irrelevant—the expert's opinion is to be weighed by the jury. *Id.*

Before a party may admit testimony from an expert witness, Rule 26 of the Federal Rules of Civil Procedure requires that the party submit a written report containing, in relevant part, "a complete statement of all opinions the witness will express and the basis and reasons for them[,]" as well as "the facts or data considered by the witness in forming them[.]" FED. R. CIV. P. 26(a)(2)(B). An expert witness may reasonably supplement, explain, or elaborate on the material set forth in their Rule 26 report. *Gay v. Stonebridge Life Ins. Co.*, 660 F.3d 58, 64 (1st Cir. 2011). However, where a party fails to comply with the mandatory disclosure requirements of Rule 26(a) and their failure was not "substantially justified or . . . harmless[,]" that "party is not allowed to use that information or witness to supply evidence . . . at a trial[.]" FED. R. CIV. P. 37(c)(1). The admissibility of expert witness testimony is thus contingent upon whether the parties "make explicit and detailed expert disclosures" that demonstrate the reliability and rigor of the proffered opinion. *Santiago-Díaz v. Laboratorio Clínico y de Referencia del Este*,

456 F.3d 272, 276 (1st Cir. 2006); *see also Rivera-Marrero v. Presbyterian Cmty. Hosp.*, 255 F. Supp. 3d 290, 296–97 (D.P.R. 2017) ("[E]xpert-related disclosures are insufficient when they consist of sketchy and vague descriptions of anticipated opinions or areas of anticipated testimony.") (quotations omitted).

### IV. Analysis

Moving Defendants challenge the admissibility of any opinions from Dr. Ortiz as to nursing staff under Federal Rule of Evidence 702 on the grounds that:

> (1) Dr. Ortiz Feliciano's testimony would not 'assist the trier of fact' in respect to Plaintiff's claims for direct liability against Menonita Guayama premised on its nursing staff's allegedly negligent deviations from the nursing standard of care <u>since he rendered no opinions as to said claims</u>; [and]
>
> (2) Dr. Ortiz Feliciano's testimony would not 'assist the trier of fact' in respect to Plaintiff's claims for direct liability against Menonita Cayey premised on its nursing staff's alleged negligence in the treatment of Mr. Hipolito Baerga Montes since he rendered no opinions as to (a) what is the applicable nursing standard of care, (b) how the nursing staff deviated from that standard of care, (c) how these deviations, if at all, caused or contributed to Mr. Baerga Montes' death.

(**ECF 137 at 5–6**). Moving Defendants likewise challenge the admissibility of such testimony under Federal Rules of Civil Procedure 26(a)(2)(B) and 37(c)(1) on the grounds that Dr. Ortiz's expert report is devoid of any opinions as to deviations of the nursing staff from an applicable standard of care. (**ECF No. 137 at 6**).

### A. Admissibility Under Federal Rule of Civil Procedure 26(a)

Nurses are subject to a distinct standard of care under Puerto Rico law in light of their distinct roles and responsibilities. "As to the standard of care owed specifically by nurses, the Puerto Rico Supreme Court has held that '[a] nurse should exercise a certain standard of reasonable care to see that no unnecessary harm comes to the patient, and

said standard of care must be the same as the standard of care exercised by other nurses in the locality or similar localities.'" *Morales v. Monagas*, 723 F.Supp.2d 416, 422 (D.P.R. 2010) (quoting *Blas Toledo v. Hospital Nuestra Señora de la Guadalupe*, 146 D.P.R. 267, 207, slip op. at 21 (1998)); *see also Castro v. Municipio de Guánica*, 87 D.P.R. 725, 728–29 (1963). Additionally, "[n]urses have the unavoidable duty to fulfill medical orders with the required urgency and in accordance with each patient's particular circumstances." *Morales*, 723 F.Supp.2d at 422.

After careful examination of Dr. Ortiz's expert report, the Court agrees with Moving Defendants that he failed to render an opinion as to alleged breach of care of the Menonita Guayama nursing staff. Because Dr. Ortiz gave no opinion applicable to the nursing staff at Menonita Guayama in his expert report, he may not give an opinion as to their actions at trial.[2] *See Rodríguez Perez v. Abreu Garcia*, 21-cv-1622, 2024 WL 808654, at *3 (D.P.R. Feb. 27, 2024) ("[T]he Court will not permit [Plaintiff] to circumvent the discovery and disclosure process by allowing [Plaintiff's expert] to testify beyond the bounds of [their] expert report[s]."). Dr. Ortiz's discussion of treatment given at Menonita Guayama is strictly limited to the actions of Dr. Rivera Hernandez. (**ECF No. 183-2 at 3–4**).[3] The report discusses neither the actions of the nursing staff at Menonita Guayama nor a standard of care applicable to them. Plaintiff does not contest that Dr. Ortiz fails to set forth a sufficient basis to testify as to the nursing staff at Menonita Guayama, nor does he seem to even contemplate that Dr. Ortiz will offer any testimony at

---

[2] The Court need not determine whether Dr. Ortiz's testimony would assist the jury with respect to Plaintiff's claims for direct liability against Menonita Guayama premised on its nursing staff's allegedly negligent deviations from the standard of care under Rule 702, as Dr. Ortiz's opinion gives no discussion of the actions of Menonita Guayama's nursing staff or a standard of care applicable to them.

[3] *See* (**ECF 183-2 at 3–4**) ("Initial evaluation by Dr Rivera Hernandez Lic 16665 of Ms. Colon Santiago Virginia deviated from accepted medical standards in . . . [t]he initial evaluation by Dr Rivera Hernandez of Mr. Hipolito Baerga was deficient in . . .").

trial that would assist the trier of fact with respect to the nursing staff at Menonita Guayama. (**ECF No. 162**). As such, Dr. Ortiz may not offer any opinion at trial that the nursing staff at Menonita Guayama violated a standard of care in their treatment of Mr. Baerga Montes and Mrs. Colón Santiago.

With respect to testimony regarding the nursing staff at Menonita Cayey, however, Dr. Ortiz's expert report does provide a sufficient basis for his testimony under Federal Rules of Civil Procedure 26(a)(2)(B) and 37(c)(1). Moving Defendants' argue that "Dr. Ortiz Feliciano provides no opinions as to what was the applicable nursing standard of care in regards to the treatment received by Hipolito Baerga Montes at the emergency room of Menonita Cayey on November 24th, 2021." (**ECF No. 73 at 17**).[4] The Court is not persuaded.

In his expert report, Dr. Ortiz states:

> A] Mr. Hipolito Baerga required reevaluation at Menonita Hospital Cayey on 11/24/2021 arriving at facility at 19:34 but was not seen by Emergency Room Physician until 21:14. This is an unjustified delay of 2 hrs. in which nothing was done to stabilize patient. B] His Vital Signs at 19:54 where at critical level; BP 91/74, Pulse 131, Resp 17 No action was taken for the next hour. C] The delay in stabilization led to cardiorespiratory arrest at 22:09 and Endotracheal intubation.

(**ECF No. 183-2 at 4**). Dr. Ortiz's statement that the delay of two hours between Mr. Baerga Montes' arrival and his being seen by a physician, during which time nothing was done to stabilize the patient, was an "unjustified delay" in treatment posits a standard of care that was violated. *See Cortes-Irizarry v. Corporación Insular De Seguros*, 111 F.3d 184, 190 (1st Cir. 1997) (holding that an expert witness need not explicitly use the words

---

[4] Although Mrs. Colón Santiago was also treated at Menonita Cayey, Plaintiff previously agreed that it has no claims for liability regarding the treatment of Mrs. Colón Santiago at Menonita Cayey, and summary judgment was granted in favor of Defendants with respect to such claims. (**ECF No. 181 at 10**). Dr. Ortiz will therefore not offer an opinion as to treatment of Mrs. Colón Santiago by nursing staff at Menonita Cayey.

"standard of care" in their report to establish a standard of care). Dr. Ortiz's report further concludes that "[t]hese are all deviations from accepted and recommended medical practice, contributing to patients' demise." (**ECF No. 183-2 at 4**). Menonita Cayey does not dispute that Germarelis Silva Figueroa, a nurse at Menonita Cayey, received Mr. Baerga Montes and was responsible for triaging him and providing attention until a physician arrived. (**ECF 103 at 15 ¶ 37**); (**ECF 110-1 at 7 ¶ 37**). Dr. Ortiz reviewed the Hospital Record of Menonita Cayey in forming his opinion and was aware that Mr. Baerga Montes was in the care of nursing staff at Menonita Cayey during the alleged unjustified delay in treatment. (**ECF No. 183-2 at 1**). It is therefore apparent that when Dr. Ortiz discusses the standard of care with respect to the delay in Mr. Baerga Montes' treatment, he is discussing the standard of care applicable to the nursing staff.

### B. Admissibility Under Federal Rule of Evidence 702

The Court also finds that Dr. Ortiz's proffered testimony both rests on a reliable foundation and is relevant to the task at hand; thus admissible under Federal Rule of Evidence 702. *See Daubert*, 509 U.S. at 597. Moving Defendants' argument that Dr. Ortiz's testimony would not "'assist the trier of facts' in respect to Plainitff's claims for direct liability against Menonita Cayey premised on its nursing staff's alleged negligence in the treatment of Mr. Hipolito Baerga Montes" is unavailing. (**ECF No. 73 at 6**). Dr. Ortiz's expert report posits that the nursing staff at Menonita Cayey delayed treatment and stabilization of Mr. Baerga Montes for two hours, that this delay breached the standard of care, and that "[t]he delay in stabilization led to cardiorespiratory arrest at 22:09 and Endotracheal intubation." (**ECF No. 183-2 at 4**). Proffered testimony on this basis is plainly relevant to assisting the jury in assessing the liability of Defendants based on the actions of Menonita Cayey's nursing staff.

Moving Defendants do not argue that Dr. Ortiz's testimony does not rest on a reliable foundation, nor does the Court see any reason to conclude as such. (**ECF No. 137**); (**ECF No. 171**). Dr. Ortiz has substantial experience in medical practice and academia, and courts regularly admit testimony from physician experts as to the standard of care applicable to nurses. *See, e.g.*, *Guerríos Flores v. S.M. Med. Servs., C.S.P.*, 18-cv-1594, 2020 WL 13490521, at *1 (D.P.R. July 21, 2020)*; Rodríguez-Valentín v. Drs.' Ctr. Hosp. (Manatí), Inc.*, 17-cv-1372, 2020 WL 6273760, (D.P.R. Oct. 22, 2020), aff'd, 27 F.4th 14 (1st Cir. 2022); *Marcano Rivera v. Turabo Med. Ctr. P'ship*, 415 F.3d 162, 168 (1st Cir. 2005). Dr. Ortiz also reviewed medical records describing Mr. Baerga Montes' treatment in preparing his expert report. (**ECF No. 183-2 at 1**). Because there is no reason this evidence should not be weighed by the jury, the Court finds the testimony reliable for purposes of Federal Rule of Evidence 702.

### V.     Conclusion

After careful consideration, the Court finds that Dr. Ortiz may testify as to the nursing staff at Menonita Cayey with respect to their treatment of Mr. Baerga Montes. Dr. Ortiz may not, however, testify as to the nursing staff at Menonita Guayama. As such, Moving Defendants' Motion in Limine is **GRANTED** in part and **DENIED** in part.

It is hereby **ORDERED**.

In San Juan, Puerto Rico, this 10th day of March, 2026.

                                                   */s/* **María Antongiorgi-Jordán**
                                                   **MARIA ANTONGIORGI-JORDAN**
                                                   **UNITED STATES DISTRICT JUDGE**