**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **HIPOLITO BAERGA-COLÓN** | |
| *Plaintiff*, | |
| **v.** | Civ. No. 22-cv-1546 (MAJ) |
| **MENONITA GUAYAMA HOSPITAL, INC.**, *et al.*, | |
| *Defendants*. | |

## OPINION AND ORDER

### I.    Introduction

Before the Court are two Motions in Limine filed by Plaintiff Hipolito Baerga Colón ("Plaintiff"), who requests that the Court prohibit Defendants Hospital General Menonita, Inc. ("Menonita Cayey") and Menonita Guayama Hospital, Inc. ("Menonita Guayama") (collectively, "Menonita Defendants") from introducing expert witness testimony from Dr. Paul Louis ("Dr. Louis"). (**ECF No. 212; 218**). For the reasons that follow, the motion at ECF No. 212 is **DENIED** and the motion at ECF No. 218 is **GRANTED IN PART AND DENIED IN PART**.

### II.    Background

The facts underlying the claims in this case have been summarized previously in the Court's Order at ECF No. 211 and have little impact on the Court's resolution of the instant motion. The Court therefore only recounts the procedural history as relevant to Plaintiff's Motion in Limine.

Menonita Defendants initially retained Dr. Gilberto Rodríguez Morales ("Dr. Rodríguez") as an expert witness to provide opinion testimony as to all claims of medical

malpractice brought against them in this action. (**ECF No. 192**). After Dr. Rodríguez had submitted his expert report, Menonita Defendants filed an emergency motion to substitute Dr. Rodríguez due to his inability to continue to serve as an expert because of medical issues. (**ECF No. 192**). The Court granted the motion to substitute, specifying that "Defendants' new expert witness shall be limited to discussing 'the same subject matter as Dr. Rodriguez Morales without meaningful changes.'" (**ECF No. 202**) (quoting *Morel v. Daimler-Chrysler Corp., 259 F.R.D. 17, 22 (D.P.R. 2009)*). The Court, in discussing motion deadlines, also stated that "[i]f expert's written report or deposition 'includes new subject areas' not addressed by Dr. Rodríguez Morales, Plaintiff may move in limine to exclude such evidence." (**ECF No. 202**) (quoting *Morel*, 259 F.R.D. at 22).

On February 6, 2026, Menonita Defendants provided notice that Dr. Louis would serve as their replacement expert. (**ECF No. 212 at 3**). Dr. Louis prepared two expert reports, one for each decedent, and was deposed by counsel for Defendants. On April 12, 2026, Plaintiff filed the first instant Motion in Limine seeking to exclude the witness reports and testimony of Dr. Louis on the basis that it included new subject matter, analytical frameworks, and theories that were not included in Dr. Rodríguez's report. (**ECF No. 212**). Menonita Defendants filed a Response in opposition on April 23, 2026. (**ECF No. 215**). On May 4, 2026, Plaintiff filed the second instant Motion in Limine seeking to exclude certain testimony from Dr. Louis on the basis that he stated at his deposition that he would not testify to those topics. (**ECF No. 218**). Menonita Defendants filed a Response in opposition on May 18, 2026. (**ECF No. 227**).

### III.    Legal Standard

The admission of expert testimony is governed by Federal Rule of Evidence 702. FED. R. EVID. 702. Rule 702 directs the court to consider the admissibility of expert

Civ. No. 22-1546 (MAJ)                                                          Page 3

testimony by determining whether "an expert's proffered testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Carrozza v. CVS Pharmacy, Inc.*, 992 F.3d 44, 55–56 (1st Cir. 2021) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). Before a party may admit testimony from an expert witness, however, Rule 26 of the Federal Rules of Civil Procedure requires that the party submit a written report containing, in relevant part, "a complete statement of all opinions the witness will express and the basis and reasons for them[,]" as well as "the facts or data considered by the witness in forming them[.]" FED. R. CIV. P. 26(a)(2)(B). An expert witness may reasonably supplement, explain, or elaborate on the material set forth in their Rule 26 report. *Gay v. Stonebridge Life Ins. Co.*, 660 F.3d 58, 64 (1st Cir. 2011). However, where a party fails to comply with the mandatory disclosure requirements of Rule 26(a) and their failure was not "substantially justified or . . . harmless[,]" that "party is not allowed to use that information or witness to supply evidence . . . at a trial[.]" FED. R. CIV. P. 37(c)(1). The admissibility of expert witness testimony is thus contingent upon whether the parties "make explicit and detailed expert disclosures" that demonstrate the reliability and rigor of the proffered opinion. *Santiago-Díaz v. Laboratorio Clínico y de Referencia del Este*, 456 F.3d 272, 276 (1st Cir. 2006); *see also Rivera-Marrero v. Presbyterian Cmty. Hosp.*, 255 F. Supp. 3d 290, 296–97 (D.P.R. 2017) ("[E]xpert-related disclosures are insufficient when they consist of sketchy and vague descriptions of anticipated opinions or areas of anticipated testimony.") (quotations omitted). In sum, "Rules 26(a) and 37(c)(1) seek to prevent the unfair tactical advantage that can be gained by failing to unveil an expert in a timely fashion[.]" *Poulis-Minott v. Smith*, 388 F.3d 354, 358 (1st Cir. 2004).

Upon the death or incapacitation of a party's expert witness, Courts have interpreted these rules to limit the substitute expert to testimony that is "substantially similar" to that of the original expert. *See Stratton v. Thompson/Center Arms, Inc.*, 608 F. Supp. 3d 1079, 1087–88 (D. Utah 2022). This is because "[i]ntroducing 'new expert testimony on the eve of trial' can prejudice the opposing party[.]" *Morel*, 259 F.R.D. at 20 (quoting *Thibeault v. Square D Co.*, 960 F.2d 239, 245 (1st Cir. 1992)). The Court, in performing this fairness analysis, looks to factors including "the need for the challenged evidence, any justifications, . . . whether the testimony will be meaningfully different from or cover the same areas as that of the original expert, and the ability of the opposing counsel to depose or cross-examine the new expert." *Id.* Crucially, "[a] late disclosure is harmless if it 'occurs long before trial and is likely subject to correction' without materially prejudicing the opposing party." *Id.* (quoting *Samos Imex Corp. v. Nextel Communications Inc.*, 194 F.3d 301, 305 (1st Cir. 1999)).

## IV.    Analysis

### A.  Motion in Limine at ECF No. 212

Plaintiff argues that Dr. Louis's testimony should be excluded because his expert reports "introduce new subject matter, new analytical frameworks, and new theories that were entirely absent from the original expert's report and testimony." (**ECF No. 212 at 2**). Specifically, Plaintiff argues that Dr. Louis's reports introduce references to American Medical Association policies, Medical Staff Essentials, Emergency Severity Index ("ESI") analysis, and "point-by-point rebuttals" of Plaintiff's expert Dr. Dainius Drukteinis ("Dr. Drukteinis") that were not discussed by Dr. Rodríguez. (**ECF No. 212 at 6–7**). Moving Defendants defend the inclusion of Dr. Louis' testimony on the grounds that (1) Dr. Louis' opinions are not meaningfully different from those of Dr. Rodríguez and (2) Plaintiff has

encountered no material prejudice from any deviations since they deposed Dr. Louis and had the opportunity to review his written reports. (**ECF No. 215 at 4–5**).

As a threshold matter, there is absolutely no basis for preventing Dr. Louis from testifying *at all*. When a substitute expert testifies outside the bounds of the original expert's report in a prejudicial manner, the appropriate remedy is to limit admissible testimony to that which falls inside the bounds of the original report. *See Poulis-Minott*, 388 F.3d at 359. Unless the entirety of Dr. Louis's reports and proffered testimony were to concern subject matter unconsidered by Dr. Rodríguez (they do not), it is unclear why Plaintiff believes that the Court's order at ECF No. 202 could serve as a basis to prevent Dr. Louis from testifying altogether.

Plaintiff is correct that certain areas of Dr. Louis's reports introduce new theories of defense not contemplated in Dr. Rodríguez's report. With respect to Mr. Baerga Montes, Dr. Rodríguez's opinion was confined to the following brief analysis and conclusion:

> It is my opinion that Mr. Hipólito Baerga Montes [sic] death was not directly caused by his automobile accident. It is my opinion that he had an unrelated condition to the accident and when he was taken to Hospital Menonita Cayey on November 24, 2021 with a GCS of 4/15 the alleged one hour delay to initiate medical treatment was of no consequences and no causal relationship.
> . . .
>
> It is my opinion to a high degree of medical certainty that in this case there was no departure from the accepted standard of care by the Hospital Menonita Guayama and the Hospital Menonita Cayey and their personnel.

(**ECF No. 222-1 at 7–8**). Dr. Rodríguez's opinion was that Mr. Baerga Montes died of a condition unrelated to the accident and that any alleged delay at Menonita Cayey bore no causal relationship to his death. Although he states generally that the staff at both hospitals met their standard of care, he does not give any explanations or specify any

Civ. No. 22-1546 (MAJ)    Page 6

theories as to how they did so with respect to Mr. Baerga Montes. Dr. Rodríguez's report indicates that Menonita Defendants' theory was that they did not cause Mr. Baerga Montes' death. Dr. Rodríguez's opinion with respect to Ms. Colón Santiago, although more detailed in its medical analysis, similarly focuses on the causation of her death rather than the conduct of the nursing staff. (**ECF No. 222-1 at 8**).

Dr. Louis's reports are considerably more detailed in their discussions of the conduct of the nursing staff at both hospitals and the responsibilities faced by them. *See* (**ECF No. 222-2 at 5–8**); (**ECF No. 222-3 at 5–10**). Although his bottom-line conclusions are the same[1], Dr. Louis further analyzes the actions of the nursing staffs in treating and triaging the patients, as well as the "delineation of responsibility" between physicians and nurses in the event of a premature discharge. While the inclusion of new sources not relied upon by Dr. Rodríguez, including American Medical Association policies, and focus on specific metrics, such as ESI, do not rise to the level of "surpris[ing Plaintiff] with new theories of liability or a new subject matter after the deadlines for discovery have passed," *Morel*, 259 F.R.D. at 21; *see also Stratton v. Thompson/Center Arms, Inc.*, 608 F. Supp. 3d 1079, 1088 (D. Utah 2022), the additional areas of focus in Dr. Louis's reports indicate that the Menonita Defendants' plan to use their new expert to focus on the standard of care faced by the nursing staff at these hospitals to rebut claims that they breached a duty of care. Because Dr. Rodríguez's report only laid a foundation to speak to the medical care received by the patients and their cases of death, the proffered testimony of Dr. Louis does concern new subject areas.

---

[1] *See* (**ECF No. 222-3 at 10**) ("Because the cause of death remains undetermined even after post-mortem forensic examination, it is medically speculative to conclude that earlier intervention would have altered the outcome. There is no evidence in the medical record to suggest that the nursing staffs' actions contributed to the death of Mr. Hipolito Baerga Montes.").

These deviations, however, do not create a basis for excluding any portion of Dr. Louis's testimony without more. *Morel*, 259 F.R.D. at 21 ("The untimely disclosure is harmless because it is not materially prejudicial to plaintiffs."). Beyond citing case law and treatises that caution that late substitution of expert witnesses *can* prejudice parties, Plaintiff makes no attempt to describe *how* he specifically will be disadvantaged by Dr. Louis's testimony in this litigation. (**ECF No. 212 at 7**). First, once the substitution of expert was granted in early October 2025 (**ECF No. 202**), the court issued a new scheduling order continuing the trial for eight (8) months to allow plaintiff to conduct expert discovery (**ECF No. 202**). Second, plaintiff had the opportunity to depose Dr. Louis in March 2026, three (3) months prior to trial. *See id.*, 259 F.R.D. at 21 ("Perhaps most important for the harmlessness analysis [is that] plaintiffs will not be prejudiced by the substitution because they have time to prepare for cross-examination."); *Ferrara & DiMercurio v. St. Paul Mercury Ins. Co.*, 240 F.3d 1, 9–10 (1st Cir. 2001) (holding that there was no prejudice where a new expert was designated three months before trial). Finally, it has been four months since Dr. Louis authored his expert reports and was designated as the replacement expert. Plaintiff has had ample time to prepare for trial with full notice of the topics of Dr. Louis's testimony and does not point to any prejudice he will suffer if Dr. Louis testifies as to topics for which Dr. Rodríguez did not provide a basis for in his reports. Furthermore, the topics which Plaintiff seeks to prevent Dr. Louis from testifying to are topics that Plaintiff's own experts discuss in their expert reports. *See, e.g.*, (**ECF No. 73-6**) (Sept. 5, 2024 Expert Report of Dr. Drukteinis) (discussing ESI at length). Plaintiff would therefore be hard pressed to argue that the introduction of these topics by Dr. Louis puts him at any disadvantage. Because Plaintiff does not identify any prejudice or disadvantage, he may suffer, the Motion in Limine at ECF No. 212 is denied.

### B.  Motion in Limine at ECF No. 218

In his second Motion in Limine, Plaintiff argues that Dr. Louis's deposition testimony excludes him from providing testimony on certain topics. (**ECF No. 218 at 2**). Because Dr. Louis agreed with Plaintiff's counsel at deposition that he would not offer opinions as to certain topics, Plaintiff argues that Dr. Louis cannot testify as to those topics at trial. Specifically, Plaintiff contends that Dr. Louis's statements at deposition bar him from offering opinions as to (1) the physicians involved in this case, (2) the diagnoses or lack of diagnoses from the physicians, (3) treatment provided by physicians, (4) the causes of deaths of Mr. Baerga Montes and Ms. Colón Santiago, and (5) the expert report of Dr. Rodríguez. *Id*. After addressing the law underpinning his arguments, the Court addresses each of these contentions in turn.

In support of his motion, Plaintiff relies on case law discussing the requirement of supplemental disclosures when an expert testifies outside the bounds of their report under Federal Rule of Civil Procedure 26. But these cases do not stand for the proposition that an expert who testifies at deposition that he will not offer an opinion on a specific topic may not offer an opinion on that topic at trial. *Rivera-Marrero*, cited extensively by Plaintiff, discusses that when an expert changes his opinion at deposition, they are subject to a duty of supplemental disclosure under Federal Rule of Civil Procedure 26(e). *Rivera-Marrero v. Presbyterian Community Hosp.*, 255 F. Supp. 3d, 290, 296 (D.P.R. 2017). It does not state that an expert may not offer opinion testimony on certain topics when he states at deposition that he will not speak to those topics. The other cases cited by Plaintiff in support of this theory are likewise silent in this regard. *See Rodríguez v. Hosp. San Cristobal, Inc.*, 91 F.4th 59 (1st Cir. 2024); *Doucette v.* Jacobs, 106 F.4th 156 (1st Cir. 2024).

The Court notes, however, that expert testimony on topics which an expert explicitly stated in deposition testimony they would not testify to would potentially be unfairly prejudicial under Federal Rule of Evidence 403. *See Tenbarge v. Ames Taping Tool Systems, Inc.*, 190 F.3d 862, 865 (8th Cir. 1999) (holding that trial testimony by a medical expert was unfairly prejudicial because it contradicted the expert's admissions at deposition); *Voegeli v. Lewis*, 568 F.2d 89, 96–97 (8th Cir. 1977) (same). Since it is undisputed that Dr. Louis stated that he was not going to give an opinion as to the matters mentioned above, and that his expert reports do not provide a basis for such opinions, he is precluded from doing so at trial. *See Rodríguez Perez v. Abreu Garcia*, 2024 WL 808654, at \*3 (D.P.R. Feb. 27, 2024) ("[T]he Court will not permit Defendants to circumvent the discovery and disclosure process by allowing [Defendants' expert] to testify beyond the bounds of his expert report. To allow otherwise would be highly prejudicial to Plaintiffs."); *United States v. Varoudakis*, 233 F.3d 113, 122 (1st Cir. 2000) (discussing that unfair prejudice must be avoided under Rule 403).

Menonita Defendants clarify that the scope of Dr. Louis's opinion is limited to the nursing staff at Menonita Guayama and Menonita Cayey, and that he will ***not*** be offering opinions with respect to whether the physicians deviated from the standard of care or whether said deviations caused the deaths of Mr. Baerga Montes and Ms. Colón Santiago. (**ECF No. 227 at 3**). They point out, however, that "even though Dr. [] Louis will not be commenting on the **ultimate question** regarding Plaintiff's claims of medical malpractice against the codefendant physicians, Dr. Louis must nevertheless be allowed to comment on those aspects of the medical treatment provided by the co-defendant physicians **that relate to his opinions regarding the treatment provided by the emergency room nursing and non-medical staff in the present case**." (**ECF**

**No. 227 at 4**) (emphasis in original). This is supported by both the foundation in Dr. Louis's expert reports and the commonsense notion that a medical expert cannot reasonably give an opinion regarding the conduct of individual members of a multi-person team without discussing the care received by the patient more broadly. In general terms, the Court agrees, but since this is contingent on what Dr, Louis might testify at trial, the Court will not rule on the issue at this time.

As to the contention that Dr. Louis may not testify as to the "cause of death" of Mr. Baerga Montes and Ms. Colón Santiago, care must be exercised to treat statements in their proper context and not confuse related rhetoric. At his deposition, Dr. Louis was asked, "you will not be providing any opinions as to the cause of death of these patients. Correct?", to which he responded, "Correct." (**ECF No. 222-4 at 23**). This exchange should be understood in the context of Dr. Louis's expert reports. With respect to Mr. Baerga Montes, Dr. Louis stated that "To a reasonable degree of medical certainty, the cause of death remains undetermined . . . it is medically impossible to assert that an earlier intervention would have prevented the terminal event." (**ECF No. 222-3 at 9**). In the report regarding Ms. Colón Santiago, Dr. Louis stated "[i]t is overreaching and speculative to assume that the triage nurse and nursing staff were causally responsible for the patient's demise based on the paucity of their documentation." (**ECF No. 222-2 at 8**). Understood in this context, Dr. Louis is precluded from giving an opinion as to the precise cause of deaths of the decedents, but he may opine on whether and how the actions of the nursing staff contributed to their deaths, if at all.

Finally, Plaintiff's argument that Dr. Louis may not comment on the expert report of Dr. Rodríguez is not objected to by the Menonita Defendants. (**ECF No. 227 at 8**). Dr. Louis was asked at deposition whether he had read Dr. Rodríguez's report and whether

he agreed with it. Dr. Louis responded that he had read it and that "I agree with my report. I do not plan on commenting on his report." (**ECF No. 222-4 at 42**). As such, Dr. Louis may discuss that he reviewed Dr. Rodríguez's report but he is precluded from commenting on the contents of the report in any substantive manner.

## V.      Conclusion

After careful consideration, Plaintiff's Motion in Limine at ECF No. 212 is **DENIED** and Plaintiff's Motion in Limine at ECF No. 218 is **GRANTED IN PART AND DENIED IN PART**.

It is hereby **ORDERED**.

In San Juan, Puerto Rico, this 16th day of June, 2026.

/s/ **María Antongiorgi-Jordán**
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**